# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

**JOHN L. DOBBINS, JR.**                                                           **PLAINTIFF**

**V.**                  **CASE NO. 4:16-CV-00826 JM-JTK**

**NANCY A. BERRYHILL, ACTING**
**COMMISSIONER OF SOCIAL SECURITY**
**ADMINISTRATION**                                                **DEFENDANT**

## RECOMMENDED DISPOSITION

**I.**    **Procedures for filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to District Judge James Moody, Jr. You may file written objections to this Recommendation. If you file objections, they must be specific and must include the factual or legal basis for your objection.

Your objections must be received in the office of the United States District Court Clerk within fourteen (14) days of this Recommendation.

If no objections are filed, Judge Moody can adopt this Recommendation without independently reviewing the record. By not objecting, you may also waive any right to appeal questions of fact.

**II.**    **Introduction:**

Plaintiff, John L. Dobbins, Jr., applied for disability benefits and supplemental security income on May 29, 2013, alleging a disability onset date of January 1, 2007. (Tr. at 52). Dobbins amended his onset date to September 25, 2013, and the relevant time-period extends from that date through October 7, 2015, the date of the hearing decision. *Id*. After conducting a hearing, the Administrative Law Judge ("ALJ") denied Dobbins's application. (Tr. at 65). The Appeals Council denied his request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the

Commissioner, and Dobbins has requested judicial review.

For the reasons stated below, this Court should affirm the decision of the Commissioner.

**III. The Commissioner's Decision:**

The ALJ found that Dobbins had not engaged in substantial gainful activity since the amended alleged onset date of September 25, 2013. (Tr. at 55). The ALJ found, at Step Two of the sequential five-step analysis, that Dobbins had the following severe impairments: degenerative joint disease of the left shoulder and left knee, mood disorder, and carpal tunnel syndrome. *Id.*

At Step Three, the ALJ determined that Dobbins's impairments did not meet or equal a listed impairment. *Id*. Before proceeding to Step Four, the ALJ determined that Dobbins had the residual functional capacity ("RFC") to perform light work with restrictions: 1) he could only occasionally climb, balance, stoop, and bend; 2) he could never crouch, kneel, or crawl; 3) interpersonal contact must be incidental to the work performed; 4) the complexity of tasks must be learned and performed by rote with few variables and little judgment; and 5) the supervision required must be simple, direct, and concrete. (Tr. at 57). The ALJ next determined that Dobbins could not return to past relevant work. (Tr. at 62). At Step Five, the ALJ relied on the testimony of a Vocational Expert ("VE") to find that, based on Dobbins's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that he could perform. (Tr. at 63). Based on that determination, the ALJ held that Dobbins was not disabled. *Id.*

**IV. Discussion:**

A. Standard of Review

The Court's role is to determine whether the Commissioner's findings are supported by substantial evidence. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). "Substantial evidence" in this context means less than a preponderance but more than a scintilla. *Slusser v. Astrue*, 557

F.3d 923, 925 (8th Cir. 2009). In other words, it is "enough that a reasonable mind would find it adequate to support the ALJ's decision." *Id.* (citation omitted). The Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. The Court cannot reverse the decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)).

    B.   Dobbins's Arguments on Appeal

Dobbins argues that substantial evidence does not support the ALJ's decision to deny benefits. He contends that the ALJ's credibility finding and RFC determination were improper. For the following reasons, the Court finds that substantial evidence supports the ALJ's decision.

Before coming to a conclusion on a claimant's credibility, the ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including prior work record, as well as observations by third parties and treating and examining physicians regarding: 1) the claimant's daily activities; 2) the duration, frequency, and intensity of pain; 3) precipitating and aggravating factors; 4) dosage, effectiveness and side effects of medication; and 5) functional restrictions. *Polaski v. Heckler*, 751 F.2d 943, 948 (8th Cir. 1984).[1]

An ALJ "has a duty to assess the credibility of the claimant and other witnesses." *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992). A reviewing court "will defer to an ALJ's credibility

---

[1] Social Security Ruling 16-3p, 2016 SSR LEXIS 4, removed the word "credibility" from the analysis of a claimant's subjective complaints, replacing it with "consistency" of a claimant's allegations with other evidence. It became effective on March 28, 2016, but the underlying analysis still incorporates the same factors discussed in *Polaski* and requires the ALJ to make a determination based on all evidence in the record. *Martsolf v. Colvin*, No. 6:16-cv-00348-NKL, 2017 U.S. Dist. LEXIS 2748 (W.D. Mo. Jan. 9, 2017). The Court notes that the date of the hearing decision in this case predated the effective date of SSR 16-3p, so the Court applies the standard credibility analysis here.

finding as long as the ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so." *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010).

Dobbins limits his argument to his knee condition, and the medical evidence shows he had some difficulty with his left knee arising from osteoarthritis and a meniscus tear. (See April 1, 2014 MRI at Tr., 513). Anti-inflammatories, narcotics, and steroid injections did not bring complete relief from pain. (Tr. at 491).

On August 20, 2013, state-agency medical examiner, Joel Cobb, M.D., evaluated Dobbins for left knee pain and found negative straight-leg raise bilaterally and normal gait. (Tr. at 407). Dobbins could tandem walk and walk on heels and toes, but could not squat or arise from a squatting position. *Id*. He had no muscle weakness or atrophy and his reflexes were intact. *Id.* Dr. Cobb did not diagnose a knee impairment, but rather diagnosed shoulder, wrist, and ankle pain. (Tr. at 408). He concluded that Dobbins would have a moderate limitation in lifting, carrying, squatting and working overhead. *Id*.

On September 25, 2013, during an office visit with Harold M. Betton, M.D., Dobbins complained of left knee pain and instability. (Tr. at 454). Dr. Betton found no localized joint pain or stiffness. (Tr. at 455). He diagnosed patellofemoral syndrome of the left knee. (Tr. at 456). On January 31, 2014, Dobbins underwent an arthroscopic medial meniscectomy. (Tr. at 430). After an arthroscopy of the left knee revealed grade III changes, Dobbins underwent a total left knee arthroplasty on May 2, 2014. (Tr. at 491). Post-surgery, on July 17, 2014, a left knee x-ray revealed no acute findings. (Tr. at 471). Dobbins had surgery on February 20, 2015 to remove fibrosis and scar tissue after complaining of left knee pain. (Tr. at 530).

In March 2015, Dobbins saw orthopedist Bernard Crowell, M.D. (Tr. at 521). He

complained of swelling and soreness in the left knee and reported that he walked with a cane. *Id*. He walked with an antalgic gait. *Id.* Physical therapy was prescribed and Dobbins had three visits in March 2015. (Tr. at 518-521). He tolerated the therapy well. (Tr. at 520).

On March 30, 2015, Dobbins returned to Dr. Crowell because of pain caused by working in the yard. (Tr. at 517). On April 1, 2015, he told Dr. Crowell that he was feeling better and continued to work in the yard. (Tr. at 544). His balance and coordination were improved and he was able to progress without pain. *Id*. Subsequently, he saw Dr. Crowell on April 8, 2015 because working in the yard had caused soreness in the left knee. (Tr. at 542). Dr. Crowell continued him on the current plan of care. *Id*. Dr. Crowell's assessment on April 10, 2015 was that "patient has reached maximum potential with therapy due to osteoarthritis and joint limitations and active work as a landscaper [and] contractor. As long as patient remains active he will maintain functional levels for all ADL's [activities of daily living] and work." (Tr. at 541). An ability to work with an impairment shows that the impairment is not disabling. *Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004).

As for opinion evidence, state-agency non-examining medical consultants opined on October 2, 2013 and March 10, 2014 that Dobbins could perform light work (occasionally lift, carry, push, and pull twenty pounds; frequently lift, carry, push, and pull ten pounds; stand or walk six hours in an eight-hour day; sit for six hours in a eight-hour day), but could only occasionally reach overhead with his left arm, and only occasionally handle and manipulate with his right arm. (Tr. at 108-109, 143-144).

At the hearing, Dobbins complained of pain in the left knee that only allowed him to sit and stand for a few minutes. (Tr. at 77-78). However, on a function report, he reported that he

5

could maintain personal care and hygiene including dressing and bathing, as well as make his bed, iron clothes, sweep, dust, and help clean the house. (Tr. at 281-287). Dobbins said he shopped in stores once a month for 1-2 hours, and enjoyed fishing and going to church. *Id*. Such daily activities undermine his claims of disability. *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995); *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

Dobbins argues that the ability to do moderate daily activities does not mean he can "perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world. *Draper v. Barnhart*, 425 F.3d 1127, 1131 (8th Cir. 2005). While this is true in some cases, here the ALJ correctly applied *Polaski* to find that Dobbins's daily activities were inconsistent with his subjective complains. Dobbins did not complaint of side effects from medication, no doctor placed functional restrictions on him, and he continued with yard work even after he experienced knee pain. *See Hensley v. Barnhart*, 352 F.3d 353, 357 (8th Cir. 2003)(a lack of physician-imposed restrictions may serve as a reason to discredit a claimant's credibility).

Likewise, Dobbins responded well to physical therapy. (Tr. at 520, 544). Impairments that are controllable or amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000). Overall, clinical testing did not reveal musculoskeletal abnormalities. Objective tests showing mild to moderate conditions do not support a finding of disability. *Masterson v. Barnhart*, 363 F.3d 731, 738-39 (8th Cir. 2004). It is proper for an ALJ to discount a claimant's subjective complaints when the evidence as a whole demonstrates inconsistencies, and here, the record renders Dobbins's complaints less than credible. *Burns v. Sullivan*, 888 F.2d 1218, 1220 (8th Cir. 1989).

As for the RFC argument, the ALJ appropriately considered the above-cited evidence to determine the correct RFC. A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of his impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996). An ALJ is not required to include limitations in the RFC that are not supported by the evidence in the record. *McGeorge v. Barnhart*, 321 F.3d 766, 769 (8th Cir. 2003). The RFC in this case (light work with some postural limitations) aligns with the medical record, including the opinions of the state medical consultants, and it reflects the actual activities Dobbins was able to undertake (landscaping and contracting). The ALJ did not err in his RFC determination.

## V. Conclusion:

There is substantial evidence to support the Commissioner's decision to deny benefits. The ALJ did not err in his credibility finding or RFC determination. The finding that Dobbins was not disabled within the meaning of the Social Security Act, therefore, should be affirmed. The case should be dismissed, with prejudice.

IT IS SO ORDERED this 8th day of August, 2017.

_____
UNITED STATES MAGISTRATE JUDGE